421 A.2d 1060

REPUBLIC STEEL CORPORATION

v.

WORKMEN'S COMPENSATION APPEAL BOARD,
Commonwealth of Pennsylvania, and Alex Shinsky.

Appeal of Alex SHINSKY.

Supreme Court of Pennsylvania.

Argued Sept. 29, 1980.

Decided Oct. 31, 1980.

Benjamin L. Costello, Pittsburgh, Kenneth J. Yablonski, Washington, for appellant.

Scott E. Becker, Linton L. Moyer, Thomson, Rhodes & Grigsby, William Jones, Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Commonwealth Court [1], which reversed a decision of the Workmen's Compensation Appeal Board (hereinafter Board). The Board had affirmed a referee's decision awarding benefits to the appellant, Alex Shinsky, on the basis that he had been totally disabled by coal miner's pneumoconiosis.

Appellant worked as a coal miner for more than twenty-five years and was employed by the appellee, Republic Steel Corporation (hereinafter Republic), from 1971 until January 7, 1975, when respiratory difficulties precipitated his retirement. Appellant Shinsky notified Republic of disability caused by occupational disease on December 1, 1975, and filed his claim petition on December 11, 1975.

Republic raised before the Workmen's Compensation referee the issue of whether notice of such occupational disease was timely given, in view of the fact that Shinsky received medical treatment, in connection with a breathing problem, from Dr. A. G. Saloom from 1971 until mid 1975. Republic contends that Shinsky knew he suffered from pneumoconiosis at the *latest* in mid 1975, alleging that he had been so informed by Dr. Saloom. This was more than 120 days before notice was given to Republic. Hence, it was argued before the Workmen's Compensation referee that there had been a failure to comply with the 120 day notice requirement of Section 311 of the Pennsylvania Workmen's Compensation Act, which provides:

1. *Republic Steel Corporation v. Workmen's Compensation Appeal Board et al.*, 48 Pa.Cmwlth. 131, 408 A.2d 1200 (1979).

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty–one days after the injury, no compensation shall be due until such notice is given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term "injury" in this section means, in cases of occupational disease, disability resulting from occupational disease.

Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 631 (1980 supp.). The referee resolved the factual issue of notice as follows:

"Although claimant had filed on three separate occasions for federal black lung benefits and had been doctoring with Dr. A. G. Saloom from 1971 and further that Dr. Saloom feels that he must have told the claimant on July 3, 1975, that he was totally disabled from coal workers pneumoconiosis, this referee is of the opinion that the first time that the claimant was fully aware of the seriousness of his condition and that he was totally disabled from coal workers pneumoconiosis was when he had been examined by another independent physician, Dr. Thomas Connely, on October 31, 1975, and had been told the results of said examination, '. . . he is totally and permanently disabled from coal workers pneumoconiosis as a result of his cumulative exposure to coal dust while employed as an active miner by letter dated November 11, 1975, to his union attorney; and that upon learning the results of his examination, he notified his last employer through his

attorney by certified mail #917210 dated December 1, 1975, and received on December 3, 1975, which was within 30 days of his awareness.' "

Appellant maintains that Commonwealth Court, in reversing the decision of the Board, usurped the fact finding authority of the Board, thereby exceeding the proper scope of review by an appellate court with respect to the findings of an administrative agency.

The standard of review of agency proceedings by appellate courts in this Commonwealth is the determination of whether there is substantial evidence to support the findings of the agency. *Keystone Water Company v. Pennsylvania Public Utility Commission*, 477 Pa. 594, 385 A.2d 946 (1978). *Shenandoah Suburban Bus Lines*, 355 Pa. 521, 50 A.2d 301 (1947). Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Shenandoah Suburban Bus Lines, supra.* Hence, appellate review must focus on whether there is rational support in the record, when reviewed as a whole, for the agency action. These principles have repeatedly been stated in another fashion: Review of the findings of fact is limited to the question of whether the lower court's findings are adequately supported by the evidence as a whole; credibility is solely an issue for the finder of fact; and findings of fact will be overturned only if they are arbitrary and capricious. See *Kay v. Kay*, 460 Pa. 680, 334 A.2d 585 (1975). *Hatalowich v. Redevelopment Authority of City of Monessen*, 454 Pa. 481, 312 A.2d 22 (1973). In applying this standard of review to the findings of an administrative agency, it has been held by the Commonwealth Court itself that an appellate court, in order to reverse, must conclude that the findings of the agency are *totally* without support in the record. *Owens v. Workmen's Compensation Appeal Board*, 39 Pa.Cmwlth. 510, 395 A.2d 1032 (1979).

Upon review of the whole record in the present case, we find substantial evidence supporting the Board's finding of fact and, hence, the referee's and Board's findings cannot

be described as arbitrary or capricious. It is undisputed that appellant Shinsky received medical care from 1971 to 1975, and there is evidence in the record to support the conclusion that he had a breathing problem during that period, but there is also testimony that he did not understand or realize that the breathing problem was pneumoconiosis until October 31, 1975. There is also testimony by Dr. Saloom, which is not unequivocal, that Shinsky did receive notice prior to October, 1975 that he was suffering from pneumoconiosis. However, the statement of this treating physician was not unqualified. When asked if he had informed Shinsky that he was totally disabled and suffering from pneumoconiosis, Dr. Saloom replied:

"Let's put it this way, *I must have informed him.* Yes, I'm sure. *I think it was something,* you know, I don't have a record on here, but I think there were telephone calls that he would–Mr. Shinsky wasn't a man–he was one of those who said well you know, god's will or something like that at times, and he wasn't–I mean he wasn't one to come and sit in a doctor's office." (Emphasis added.)

Thus, there are at least three possibilities or supportable inferences which could have supported the referee and Board's findings of fact. First, Dr. Saloom did not appear to have first–hand recollection of telling Shinsky the nature of his illness, and the doctor's records do not state that he did. The referee could simply have resolved the disputed issue of fact in favor of the claimant; the Board may have concluded that in fact Shinsky was not informed that he had pneumoconiosis more than 120 days before the notice was filed, thereby resolving a credibility issue in favor of Shinsky. There is no question that the issue is disputed, but it is the function of the finder of fact to resolve disputed issues of fact, and it is clear that the issue was resolved in favor of the claimant, and that there is evidence to support it. Second, the referee may justifiably have concluded that, while notice was given to Shinsky by Dr. Saloom in the first part of 1975, Shinsky did not understand what he was being told, nor, as a reasonable man, what he should have under-

stood. This position is more difficult to justify, but, since it involves an inference from the facts, since all inferences most favorable to Shinsky must be drawn, and since there is direct testimony which fairly can be characterized as indicating he did not understand from Dr. Saloom the nature of his illness, there is support for this inference in the record. The third possibility is that Shinsky understood that he had pneumoconiosis, but did not understand that he was totally disabled by it. Thus, there is substantial evidence on the whole record for the position of the Board.

Order of the Commonwealth Court reversed.