John F. Fox, Jr., Appellant *v.* Civil Service Commission of the City of Philadelphia, Appellee.

Argued April 4, 1984, before Judges ROGERS, CRAIG and BARRY, sitting as a panel of three.

432

*Michael A. Tier,* with him, *F. Emmett Fitzpatrick, F. Emmett Fitzpatrick, P.C.,* for appellant.

*Jesse Milan, Jr.,* with him, *Kenneth L. Fox,* Assistant City Solicitor, *Barbara Axelrod,* Deputy City Solicitor and *Mark A. Aronchick,* City Solicitor, for appellee.

OPINION BY JUDGE BARRY, July 2, 1984:

This appeal results from an order of the Court of Common Pleas of Philadelphia, affirming a decision of the appellee, the Civil Service Commission of the City of Philadelphia (Commission), which sustained the dismissal of appellant, John F. Fox, from the Philadelphia Police Department.

On May 29, 1980, appellant, then an officer of the Philadelphia Police Department, responded to a police radio call concerning a problem at 627 South 19th Street in Philadelphia. Upon arriving at the scene, appellant was told by a Philadelphia Gas Works employee that a fellow officer was inside the building and that someone in the building had a gun. Appellant drew his gun and ran into the vestibule where he found Officer George Lopit, who told appellant

that a resident in a certain apartment had pointed a gun at him.

A strong gas smell permeated the vestibule of the building. One door leading to an apartment was open approximately six inches. Without asking Lopit for an evaluation of the situation and without identifying himself as an officer and asking the resident to open the door, appellant kicked in the door, breaking a chain lock which had been secured. At no time before kicking in the door was any weapon pointed at appellant. Once the door was opened, appellant was confronted by a ninety four year old male, Joseph Jackson, who was brandishing what appeared to be a revolver; appellant fell to the floor and after hearing a click which sounded like a pulled trigger, appellant fired two shots, killing Jackson. As it turned out, Jackson had only a starter's pistol.

Appellant was discharged following an internal investigation by the police department. Appellant then appealed the dismissal to the Commission which, after hearing testimony, sustained the dismissal, finding that appellant had violated a departmental directive pertaining to barricaded persons. The Court of Common Pleas of Philadelphia affirmed the Commission's order and this appeal followed.

Appellant argues the court erred in finding he had violated Police Directive No. 111, thereby allowing his dismissal from the police force. The court, however exercised appellate-type review as it took no additional evidence; the court, therefore, held the Commission's adjudication and factual findings in support thereof were supported by substantial evidence. The Local Agency Law, 2 Pa. C. S. §754(b) (Supp. 1964-82) provides:

> In the event a full and complete record of the proceedings before the local agency was

made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

As appellant makes no argument concerning any error of law, we will treat his brief as a challenge to the sufficiency of the evidence.

In *Republic Steel Corp. v. Workmen's Compensation Appeal Board,* 492 Pa. 1, 5, 421 A.2d 1060, 1062-63 (1980), the court stated:

Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . Hence, appellate review must focus on whether there is rational support in the record, when reviewed as a whole, for the agency action. These principles have repeatedly been stated in another fashion: Review of the findings of fact is limited to the question of whether the lower court's findings are adequately supported by the evidence as a whole; credibility is solely an issue for the finder of fact; and findings of fact will be overturned only if they are arbitrary and capricious. . . . In applying this standard of review to the findings of an . . . agency, it has been held by the Commonwealth Court itself that an appellate court, in order

to reverse, must conclude that the findings of the agency are *totally* without support in the record. (Emphasis in original.) (Citations omitted.)

Philadelphia Police Department Directive No. 111 provides in pertinent part:

SUBJECT: BARRICADED PERSONS

I. DEFINITION

A. A barricaded person is usually one or a combination of two basic types of individuals:

1. Criminals who may be cornered at or near a crime scene with or without hostages.

2. Emotionally unstable persons who have taken a position, inside or outside, with or without hostages and have indicated by action or implication that they intend to harm themselves or others.

II. POLICY

A. The Police Department will make every attempt to remove a barricaded person by the safest and most efficient manner possible.

B. Time is of no importance in removing these persons unless there is immediate danger to life. . . .

III. PROCEDURE

A. The ranking officer on the scene will be the overall commander.

B. No AGGRESSIVE action is to be taken by police personnel unless there is an immediate danger to life or unless directed by the overall commander.

C. Personnel of all ranks will be kept out of the view of the barricaded person whenever possible.

. . . .

E. Force is to be used only as a *last resort*. Stakeout Unit personnel will put on helmets and protective vests and are the only personnel authorized to utilize special weapons or equipment. Their activities will be controlled by the overall commander.

All police personnel will inform the communications vehicle of their arrival and position as soon as conditions permit.

(Page 5, opinion of GELFAND, J.)

Appellant was charged with violating this directive in the following specifics:

Section II:

a. In that in the above incident you failed to make every attempt to remove the barricaded person by the most efficient manner.

b. In that you took immediate action in the absence of immediate danger to life and without direction by the overall commander. Your immediate supervisor had acknowledged to Radio that he was enroute to scene.

Section III:

a. In that you failed to request or wait for a supervisor to take command of the situation.

b. In that you took aggresive [sic] action where there was no immediate danger to life or without direction by the overall commander.

c. In that you kicked down the door and by entering the premises you placed yourself in full view of the barricaded person. This act placed you and a fellow officer in jeopardy.

. . . .

e. In that you used deadly force without it being the last resort and you pursued no other means to remove the barricaded person.

 f. In that you failed to notify communications as to your arrival and situation.

(Notice of intention to dismiss, July 7, 1980.)

 In its opinion, the Commission stated:

 In our judgment, this case . . . manifests a patent violation of the barricaded persons directive. The testimony and evidence clearly establish appellant knew he was confronted with an adversary with a gun. He did not, however, act responsibly and reasonably after making this initial discovery.

 We find the evidence demonstrates appellant had ample opportunity to secure the area and to isolate the occupant of the apartment, to call for a supervisor and additional tactical police manpower and to contain the situation. Instead, appellant exhibited poor judgment, acted impulsively, entered the apartment by either pushing in or kicking down the door, thereby bringing about a face-to-face confrontation with the apartment occupant with gun in hand. Appellant acted spontaneously without thought or consideration of the procedures he had been taught. By so doing, he endangered his life and the lives of others close at hand.

(Opinion of Commission, pp. 4-5, November 13, 1980.)

 Our review of the entire record convinces us that the charges brought against appellant were proved by substantial evidence. Appellant attempts to argue a number of factual questions which, in our view, are no more than a reargument of those points advanced before the fact finder. Most importantly, appellant argues he was unaware of being confronted with a situation involving a barricaded person. Appellant, however, never asked his fellow officer, the one who initially was confronted by Jackson, for an evalua-

tion of the situation. Further, appellant was told that someone in the building had a gun. The record also indicates appellant was aware a supervisor was enroute to the scene. In view of this, appellant's action, no matter how well intentioned, constituted deliberate violation of the directive. As such, just cause was proven by substantial evidence to allow appellant's dismissal from the force.

ORDER

AND Now, July 2, 1984, the order of the Court of Common Pleas of Philadelphia, dated November 16, 1982, at No. 2385, is affirmed.