556 A.2d 486

University of Pittsburgh, Appellant *v.* City of Pittsburgh Commission on Human Relations and Arthur Robinson, Appellees.

Argued February 6, 1989, before Judges COLINS and MCGINLEY, and Senior Judge BARBIERI, sitting as a panel of three.

*Martha Hartle-Munsch,* with her, *Scott F. Zimmerman* and *Robert F. Prorok, Reed, Smith, Shaw & McClay,* for appellant.

*Robert T. Kane,* with him, *Byrd R. Brown,* for appellees.

OPINION BY JUDGE MCGINLEY, March 23, 1989:

The University of Pittsburgh (University) appeals from an order of the Court of Common Pleas of Allegheny County which affirmed a decision of the City of Pittsburgh Commission on Human Relations (Commission) which concluded that Arthur Robinson (Robinson) was discharged from employment by the University because of his race. We reverse.

Robinson, a black male, was employed by the University for approximately fifteen years as a custodial worker until August 13, 1979, when Robinson was suspended pending investigation of an incident wherein he was charged with raping a white female co-employee on August 16, 1979. Donna Dengler (Dengler) the alleged victim, contacted John Shamlin, her supervisor, and in-

formed him that she had been raped at knifepoint by Robinson on June 18, 1979. This report was investigated by Detective Francis Walsh (Walsh) of the University Police Department. Walsh interviewed Dengler and a co-worker, Vicki Campbell. Walsh's investigation was completed and a warrant was issued for Robinson's arrest. On September 10, 1979, Thomas Cherry (Cherry) University Director of Employment and Employee Relations converted Robinson's suspension to a discharge. Robinson was eventually tried by a jury on the criminal charges and acquitted. Pursuant to a contract between the University and Robinson's union, Service Employees' International Local No. 29, a grievance was filed alleging that he was discharged without sufficient cause. This grievance was denied by the University and was subsequently heard before an arbitrator selected by both parties. The arbitrator concluded that Robinson did commit the rape and denied the grievance. Robinson subsequently brought an action before the Commission alleging that he was discharged by the University because of his race in violation of Section 659.02 of the Pittsburgh City Code. The Commission found that Robinson had met his burden of establishing a *prima facie* case of discrimination. Further, the Commission concluded that although the University's discharge of Robinson for the sexual assault appeared to be based on a legitimate non-discriminatory reason, this stated reason was merely a pretext for racial discrimination. The Commission ordered that Robinson be reinstated to his previous position when available and that the University pay Robinson full backpay. The University appealed to the Court of Common Pleas of Allegheny County (common pleas court) which affirmed the Commission. The University appeals.

The University presents three issues for our review. First, the University contends the common pleas court

erred in concluding that the Commission properly interpreted and applied the pertinent legal standards. Second, the University contends that the common pleas court incorrectly concluded that there was substantial evidence to support the Commission's finding of racial discrimination. Third, the University contends the Commission awarded an improper amount of backpay.

Our scope of review herein is limited to a determination of whether there was a violation of constitutional rights, an error of law, or whether the findings of fact necessary to support the adjudication are supported by substantial evidence. The task of weighing the evidence, both direct and circumstantial, to credit and discredit testimony, to draw inferences and make ultimate findings of fact as to whether a violation occurred is for the Commission. *Pennsylvania State Police v. Pennsylvania Human Relations Commission*, 116 Pa. Commonwealth Ct. 89, 542 A.2d 595 (1988).

In employment discrimination cases such as the one presently before us, the charging party is first required to establish a *prima facie* case of discrimination. Our state Supreme Court in *General Electric Corp. v. Pennsylvania Human Relations Commission*, 469 Pa. 292, 365 A.2d 649 (1976) adopted the United States Supreme Court's analysis in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973) for establishing a *prima facie* case. In essence this analysis requires the charging party to establish that he is a member of a protected class, *i.e.* a racial minority, and that he was treated differently from others who are not members of a protected class. Although *McDonnell-Douglas* addressed a refusal to hire, the *prima facie* test is adaptable to accommodate differences in the nature of the alleged discrimination. *Allegheny Housing Rehabilitation v. Pennsylvania Human Relations Commission*, 516 Pa. 124, 532 A.2d 315 (1987).

We need only address the University's first two contentions which are: 1) that the common pleas court erred in concluding that the Commission properly interpreted and applied the *McDonnell-Douglas* criteria; and 2) that the common pleas court erred in concluding that there was substantial evidence to support the Commission's findings of racial discrimination.

Clearly, Robinson, a black male, belongs to a protected class. However, the Commission erred in concluding that the action taken against Robinson was racially motivated. The only finding made by the Commission to support this conclusion is set forth in Findings of Fact Nos. 24-26, wherein the Commission found that subsequent to the charge against Robinson in 1979 Dengler complained to her supervisor in early 1981 that another co-worker fondled her breasts and rubbed her legs. No action was taken against the white male co-worker.

This second alleged assault and accusation occurred nearly two years after Dengler's accusation against Robinson. Federal courts have reasoned that only events occurring prior to or at the time of the alleged act of discrimination are relevant in determining whether the defendant committed discriminatory acts. *United States v. Lee Way Motor Freight, Inc.*, 7 FEP Cases 710 (W.D. Okla. 1973); *United States v. Central Motor Lines, Inc.*, 338 F. Supp. 532, 556, 4 FEP Cases 216 (W.D.N.C. 1971); *United States v. International Brotherhood of Electrical Workers, Local No. 38*, 428 F.2d 144, 151, 2 FEP Cases 716 (6th Cir. 1970), *cert. denied* 400 U.S. 943, 2 FEP Cases 1121; *United States v. Chesapeake & Ohio Ry. Co.*, 471 F.2d 582, 5 FEP Cases 308 (4th Cir. 1972), *cert. denied*, 411 U.S. 439, 5 FEP Cases 862. Robinson was either discriminated against at time of his discharge or he was not.

Accordingly, even assuming the Commission properly considered the second incident as evidence of different treatment by the University on grounds of race, this subsequent incident still does not constitute substantial evidence sufficient to support the Commission's finding of racial discrimination. Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hence, appellate review must focus on whether there is rational support in the record, when viewed as a whole, to support the agency's action. *Republic Steel v. Workmen's Compensation Appeal Board,* 492 Pa. 1, 421 A.2d 1060 (1980). Our scrutiny of the record reveals that Cherry, the individual who made the decision to terminate Robinson, testified that to the best of his recollection he did not know the race of those involved. (Notes of Testimony, Commission Hearing of June 22, 1983 (N.T.) at 174.)

We must conclude that the record when viewed as a whole does not provide sufficient relevant evidence to rationally support the Commission's finding of racial discrimination on the part of the University.

The order of the court of common pleas is reversed.

## ORDER

AND NOW, this 23rd day of March, 1989, the order of the Court of Common Pleas of Allegheny County is hereby reversed.

Judge SMITH did not participate in the decision in this case.