585 A.2d 619

**A.C.T.S., INCORPORATED and PMA Insurance Company, Petitioners,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (TITLOW), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 19, 1990.

Decided Jan. 14, 1991.

242

Peter J. Weber, with him, Jeffrey E. Toner, Rawle & Henderson, Philadelphia, for petitioners.

Marcia Binder Ibrahim, Lansdale, for respondent Titlow.

Before DOYLE and BYER, JJ., and BARRY, Senior Judge.

## OPINION

BARRY, Senior Judge.

A.C.T.S., Incorporated (A.C.T.S.), and its workmen's compensation insurance carrier, PMA Insurance Company, petition for review of an order of the Workmen's Compensation Appeal Board (Board) that affirmed the decision and order of a referee which denied A.C.T.S.'s petition for termination of workmen's compensation benefits to Roseanna Titlow (claimant) and granted her petition for reinstatement. A.C.T.S. contends (1) that the referee committed an error of law on the issue of availability of suitable work by applying a hypertechnical analysis to the "extra-light duty" job that A.C.T.S. offered to the claimant; (2) that there is no substantial evidence to support the referee's findings that the claimant is not medically and physically capable of performing the duties of the offered job and that she has been totally disabled from the time she finally left the employ of A.C.T.S.; and (3) that the Board erred by finding that the extra-light duty job offered to the claimant was not a material change from her previous job with A.C.T.S.

Claimant was employed by A.C.T.S., a private adult retirement community, as a housekeeper. On or about October 20, 1983, claimant sustained an injury to her left shoulder while lifting a window in the course of her employment. Claimant is left-handed. She was unable to work because of that injury from October 31, 1983, through December 18, 1983. A.C.T.S. paid her compensation at the rate of $153 per week pursuant to a notice of compensation payable.

Claimant returned to work on December 19, 1983, and she worked until March 2, 1985. The claimant saw her treating physician, Dr. Philip London, on approximately twelve occasions between December 23, 1983, and March 1, 1985. At the direction of Dr. London, she underwent an acromioplasty on her left shoulder to relieve some of the pain she was experiencing. The acromion is the expanded, almost rectangular end of a ridge of bone that juts from the outer surface of the shoulder blade in a sideways direction, overhanging the shoulder joint and protecting it, and forming the angle or tip of the shoulder. 1 J. Schmidt, M.D., Attorneys' Dictionary of Medicine and Word Finder A–50 (1976). An acromioplasty is an operation that involves shaving down the acromion to eliminate the rubbing of the end of that bone on the injured area of the shoulder, which rubbing makes the injured area much more painful. Deposition of Doctor London, October 20, 1986 at 11–12; Reproduced Record 180a–81a. Following that surgery, claimant was disabled, and she received compensation benefits until she returned to work on August 23, 1985. She worked until Dr. London directed her to stop working on May 30, 1986, and she has not returned to work since. During this period, the claimant missed twenty-six days of work due to pain in her left arm and shoulder.

After numerous subsequent visits with Dr. London and treatments with injections, ultrasound and exercise, which resulted in no improvement in claimant's condition, Dr. London performed an acromionectomy on March 27, 1987. Deposition of Dr. London, March 21, 1988 at 6; R.R. 205a. After several follow-up visits, Dr. London saw the claimant

for the last time on February 26, 1988. He testified that at that point she had pain and burning over the left shoulder, even at rest, which was aggravated by motion, and some tenderness. In his opinion she was unable to return to her previous job or to any work involving more than the lightest use of the left arm. *Id.* at 7; R.R. 206a.

By letter to claimant's attorney dated July 27, 1988, A.C.T.S. offered claimant a job that A.C.T.S. characterized as "extra-light duty". Exhibit D–3; R.R. 290a. As described in an attached letter from the housekeeping supervisor, Diane Shoup, to a claims representative at the PMA Group, dated September 23, 1986, A.C.T.S. offered claimant a job cleaning the tables and chairs in the facility's dining room, until such time as claimant could return to her regular housekeeping duties. The manner of cleaning was described in the earlier letter as follows:

1. Chairs moved from under the tables, without lifting.
2. Spray chairs with a prepared cleaner.
3. Wipe chairs with dry cloth.
4. Spray table legs with a prepared cleaner.
5. Wipe legs with a dry cloth.

*Id.;* R.R. 291a. In view of the testimony of Ms. Shoup at one of the hearings involved in this proceeding, the referee found that the job actually required working with a bucket of disinfectant cleaner and a wet rag. Referee's Decision, Finding of Fact No. 10; R.R. 6a.

In April of 1986, A.C.T.S. filed a petition to terminate the claimant's benefits as of August 23, 1985. The parties and the referee later agreed that the petition for termination of benefits would be closed, and the case would be continued to determine whether compensation should be reinstated as of May 30, 1986. On May 5, 1988, following a change in counsel for the claimant, the referee ruled that he would treat the case as a petition for reinstatement of benefits as of May 30, 1986.

In the course of several hearings on the petition, testimony was taken from the claimant and from her supervisor,

Ms. Shoup. In addition, two depositions of claimant's treating physician, Dr. London, and the deposition of the physician who examined the claimant on behalf of A.C.T.S., Samuel C. Santangelo, M.D., were received into evidence. The referee found that in the period following August 23, 1985, when the claimant returned to what was characterized as light duty work, her duties involved cleaning the employee restrooms, dusting and cleaning window tracks, cleaning tables and chairs in the facility dining room, and cleaning residents' apartments, except for mopping and running a vacuum cleaner. Finding of Fact No. 6; R.R. 6a. He found that those duties, although somewhat different from her duties at the time of her original injury, were not any less strenuous for her. Finding of Fact No. 4; R.R. 6a.

On the basis of the testimony of the claimant and that of Dr. London, the referee found that the claimant was medically and physically incapable of performing the "extra-light duty" job offered to her, as described in Exhibit D–3, or her previous job. Finding of Fact No. 11; R.R. 6a. He found that she has been totally disabled since May 30, 1986, and that her current disability is directly related to the injury that she suffered on October 20, 1983. Finding of Fact No. 13; R.R. 6a.

On appeal, the Board concluded that there was substantial evidence in the record to support the referee's finding that there was a recurrence of the claimant's original injury in May of 1986. The Board concluded further that the referee had not engaged in a hypertechnical analysis of the duties of the job offered to the claimant, contrary to the principles of *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). Rather, the Board concluded that the referee had properly exercised his power to make credibility determinations and to determine as a matter of fact whether the duties of the offered job were materially different from those of her previous job, and whether she was capable of performing them. A.C.T.S. has now appealed to

this court from the order of the Board affirming the order of the referee.

Our scope of review of an order of an administrative agency such as the Workmen's Compensation Appeal Board is to determine whether the agency committed a constitutional violation or an error of law and whether the necessary findings of fact are supported by substantial evidence in the record. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

■■ A.C.T.S. first repeats its contention that the referee applied a hypertechnical analysis to the question of job availability by finding that the job really required the claimant to work with a bucket of disinfectant cleaner and a wet rag, rather than with a bottle of spray cleaner and a dry rag, as described in Exhibit D–3. In *Kachinski* the Pennsylvania Supreme Court quoted with approval the standard articulated by this court in our consideration of a claimant's appeal, namely, that a position to which an employer had referred a claimant must be actually available, or within the claimant's capabilities, having regard to the claimant's physical restrictions and limitations, age, intellectual capacity, education, previous work experience and other relevant considerations, such as place of residence. *Kachinski*, 516 Pa. at 251, 532 A.2d at 379.

However, the Supreme Court concluded that this court had applied that standard in too burdensome a manner, in effect requiring the employer to specify every aspect of every job in question. The Court held:

It is enough that the employer produce medical evidence describing the claimant's capabilities, and vocational evidence classifying the job, *e.g.*, whether it is light work, sedentary work, etc, along with a basic description of the job in question. *From such evidence it will be up to the referee to determine whether the claimant can perform the job in question.... Thereafter, the decision of the referee will be reviewable as a finding of fact.*

*Id.* (emphasis added). Although the present case involves a reinstatement petition rather than a modification petition, as was involved in *Kachinski,* we believe that the *Kachinski* analysis applies to a determination of whether the claimant's benefits should be reinstated in the light of an offer of work by the employer.

A.C.T.S. focuses on the referee's finding by the admission of Ms. Shoup, that the job actually offered to the claimant was somewhat different from the job described in Exhibit D–3, and it implies that the referee's decision turned on the distinction between use of a spray bottle and dry rag versus a bucket of liquid disinfectant and a wet rag. This is what A.C.T.S. considers to be hypertechnical analysis of job availability. The flaw in this argument is that the referee did not make his determination on the basis of the employer's failure to offer a highly detailed description of the job duties to prove that the job was "available" to the claimant. Rather, the employer volunteered such a detailed description (to support its unilateral characterization of the offered job as "extra-light duty"), and then the referee made the factual determination mandated by *Kachinski* of whether the claimant was capable of performing that job, in view of her own testimony and the medical evidence concerning her condition.

As the Board noted in its opinion, Dr. London testified that the claimant's job capabilities were to be restricted to "very light, brief dusting, very light, brief carrying, light moving of objects, and that's it." Deposition of Dr. London, March 21, 1988 at 11; R.R. 210a. He emphasized that no stress could be placed on the claimant's left arm, and that if the offered job were like the jobs she had before, then she could not return to work. *Id.* The referee's factual conclusion that the claimant was not capable of performing the job offered by A.C.T.S., based on the detailed description of the job duties volunteered by the employer and a thorough consideration of the claimant's condition as described by her doctor, did not constitute a hyper-

technical analysis of job availability in violation of *Kachinski.*

■ Next, A.C.T.S. contends that the referee's Findings of Fact Nos. 11 and 13 were not supported by substantial evidence in the record. Finding No. 11 is as follows: "The Referee accepts the testimony of Claimant and of Claimant's treating physician, Dr. Philip London, that Claimant is medically and physically incapable of performing the duties of this job and of her previous job."

In describing her duties and her condition during the period from August 23, 1985 to May 29, 1986, the claimant testified in part as follows:

Q  When you returned to work on August 23rd, '85, what did you do when you went back?

A  Crawling under tables, doing table bases, scrubbing chairs and legs, which I'm left-handed....

. . . .

REFEREE PERNA: Doing the Venetian blinds and cleaning the table legs and the chair legs, that was not easy for you?

THE WITNESS: No. I was on the floor under, you know—and I had to scrub them.

BY MR. POND:

Q  Did you ever have to do any lifting?

A  No.

Q  Pulling?

A  Yes. I had to pull some tables sometimes and chairs, I had to move them so I could wash them.

. . . .

BY MR. POND:

Q  Ms. Titlow, in your own mind, do you believe you can do lighter-duty work?

A  No, I can't, because I can't do my own work at home.

Hearing of August 14, 1986, N.T. 16–19; R.R. 41a–44a.

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclu-

sion. *Republic Steel Corp. v. Workmen's Compensation Appeal Board*, 492 Pa. 1, 421 A.2d 1060 (1980). As the Board concluded, the testimony of the claimant, coupled with the testimony of her doctor described above, provided substantial evidence that the claimant could not perform the duties of the offered job.

■ Finding of Fact No. 13 states in part: "[T]he Claimant has been totally disabled since May 30, 1986." A.C.T.S. disputes this finding because its examining physician testified that the claimant could return to light duty work, and the claimant's physician testified that she could perform work involving the lightest use of her left arm. Hence, A.C.T.S. asserts that the claimant is not totally disabled. In addition to ignoring the testimony of the claimant quoted above, this argument is based on a misunderstanding of the technical term "total disability". Under *Kachinski*, where an employer seeks to modify a claimant's benefits from total to partial, the employer must first produce evidence of a change in the claimant's physical condition. Then the employer must produce evidence of a referral or referrals to a then open job or jobs fitting the occupational category for which the claimant has been given medical clearance. The claimant must then demonstrate that he or she has, in good faith, followed through on the referrals. If the referrals fail to result in a job, then the claimant's benefits continue. *Kachinski*, 516 Pa. at 252, 532 A.2d at 380. Where the described scenario is played out, with exercise of good faith by all participants, the claimant's benefits continue *at the existing total disability rate.* In other words, the status of "total disability" means that the claimant has not, in good faith, been able to secure a job within her restrictions, regardless of whether she has some residual ability to perform some kind of work. *Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668 (1968). Although Finding of Fact No. 13 might perhaps be more accurately labeled a conclusion of law, there was substantial evidence in the record to support it.

██ Finally, A.C.T.S. contends that the Board erred by concluding that the job offered to the claimant was not materially different from her previous duties. A.C.T.S. is correct in pointing out that the Board was incorrect in stating in its opinion that Ms. Shoup testified that the job offered to the claimant in 1988 was the same job she performed when she returned to work in August of 1985. Claimant's testimony quoted above clearly indicates that in that period she performed the table and chair cleaning duties along with other duties. Nevertheless, we reject the contention of A.C.T.S. that the Board erred as a matter of law when it concluded that the job offered in 1988 was not materially changed from her previous duties. In view of the evidence as a whole we conclude, as did the Board, that substantial evidence supported the referee's conclusion that the job offered in 1988 was not materially different from her previous job in terms of the effect it would likely have on the claimant and in terms of her ability to perform the job. As *Kachinski* held, the referee's determination whether a claimant could perform a particular job is reviewable as a finding of fact. As discussed above, we regard the testimony of the claimant and of her doctor as sufficient to form a basis for a conclusion that the claimant was not physically able to perform the table and chair cleaning job.

Accordingly, we shall affirm the order of the Workmen's Compensation Appeal Board affirming the order of the referee.

## ORDER

NOW, January 14, 1991, the order of the Workmen's Compensation Appeal Board at No. A89–914, dated February 26, 1990, is affirmed.