## St. Joseph's Center v. Board of Zoning Appeals of Scranton

C.P. of Lackawanna County, no. 95 Civil 2958.

*Joseph A. O'Brien* and *James J. Gillotti,* for plaintiff.
*Edmund J. Scacchitti,* for defendant.

MUNLEY, *J.,* February 15, 1996—This matter is before the court on an appeal from a decision of the Board of Zoning Appeals of the City of Scranton revoking St. Joseph's Center's certificate of conformance.

On March 24, 1995, the Center was issued the certificate to use a two-family dwelling located at 835 North Irving Avenue, Scranton, Pa., as available housing for women and teenage girls experiencing untimely pregnancy in the Center's maternity program. The program is operated under the auspices of the Congregation of the Sisters, Servants of the Immaculate Heart of Mary (IHM). The premises are located in an R-1A zone, which permits single-family/half of twin dwelling units. The record reveals that the subject premises has been utilized as a two-family home since 1910. Objectors in the neighborhood filed an appeal to the issuance of the certificate on April 4, 1995. Next, on

June 8, 1995, the board voted to revoke the Center's certificate of conformance. The board concluded that the Center's intended use for the premises did not comply with the zoning ordinance of the City of Scranton.

Appellant Center contends that its intended use of the premises would be a continuation of an existing nonconforming use, and would house a "family" as that term is defined in the ordinance. Conversely, the board argues that its decision should not be reversed, that the Center's intended purpose for the premises is not in compliance with the ordinance, and that the proposed use constitutes a "rooming house."

Our review of this matter is limited to whether the board abused its discretion, or committed an error of law, or made findings not supported by substantial evidence in the record. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). See generally, *City of Pittsburgh v. Zoning Board of Adjustment of City of Pittsburgh,* 522 Pa. 44, 559 A.2d 896 (1989). Further, the board's findings must be supported by substantial evidence. Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Republic Steel Corp. v. W.C.A.B.,* 492 Pa. 1, 421 A.2d 1060 (1980). With the aforementioned principles in mind, we have reviewed the board's findings and determined that the board's decision to revoke the Center's certificate of conformance was in error.

Both parties stipulate the utilization of the premises as a two-family home is a lawful nonconforming use in an R-1A district.[1] The primary dispute involves the

1. Section 10107 of the "Pennsylvania Municipalities Planning Code," 53 P.S. § 10107 defines "nonconforming use" as: a use, whether of land or of structure, which does not comply with the applicable

question of whether the Center's intended use of the premises complies with the ordinance's definition of a "family." The Scranton ordinance defines "family" in pertinent part as follows:

"One or more persons living in a single dwelling unit and functioning as a common household unit sharing household expenses and sharing joint use of the entire dwelling unit. If a dwelling unit is rented, in order to qualify as a family, there shall not be more than [one] lease among all of the occupants. A family shall not include more than [four] persons who are not related to each other. . . ." City of Scranton Zoning Ordinance, 1993, article II, section 202, pp. 2-11.

We are mindful of well-settled principles applicable to interpreting and applying zoning ordinances. When a phrase appears in a zoning ordinance, the permissive nature of the phrase must be taken in its broadest sense, and any restrictive nature of the phrase must be taken in its strictest sense. The purpose of such rule is to give a landowner the least restrictive use and enjoyment of his land. *Burgoon v. Zoning Hearing Board of Charlestown Township,* 2 Pa. Commw. 238, 277 A.2d 837 (1971). Further, "zoning restrictions are not to be construed so as to restrict the use of land by implication." *Appeal of Miller,* 511 Pa. 631, 640, 515 A.2d 904, 909 (1986) (citing *Fidler v. Zoning Board of Adjustment of Upper Macungie Township,* 408 Pa. 260, 182 A.2d 692 (1962)). Guided by these standards, we find that although the residents will not be a "biological" family, each of the apartments would house a "family" as that

use provisions in a zoning ordinance or amendment heretofore or hereafter enacted, where such use was lawfully in existence prior to the enactment of such ordinance or amendment, or prior to the application of such ordinance or amendment to its location by reason of annexation.

term is defined in the ordinance. See *supra.* The definition of "family" is composed of the following elements (board's decision paragraph 28): (1) residents functioning as a common household unit; (2) sharing of household expenses; (3) sharing joint use of the entire dwelling unit; (4) if unit is rented, there cannot be more than one lease among all of the occupants; and (5) there cannot be more than four unrelated persons in a single dwelling unit.

Our analysis of this dispute based upon a close examination of the record reveals that the residents of the program function as a common household unit. There is substantial and uncontradicted testimony that the program involves a caring home environment. Sister Frank discussed how residents live together, cook together, and take care of the home together; that they participate together in activities such as having meals, going to shows and movies, renting videos, picnics, as well as celebrating birthdays and holidays. The program also encourages prenatal care and counseling. Professional counseling by licensed counselors would be provided off-site, not at the residence; while informal prenatal-type counseling, consistent with a caring familial unit, would take place at the residence. Moreover, residents are instructed in such rudimentary home skills as budgeting money, place settings and conversing at the dinner table, and the taking of responsibility for household and laundry chores.

Further, the lack of blood or marital connection between members is not relevant unless the ordinance specifically requires such relationships. See *Miller, supra; Children's Aid Society v. Zoning Board of Adjustment,* 44 Pa. Commw. 123, 402 A.2d 1162 (1979). Scranton's ordinance does not require such relationships. The ordinance merely requires residents of the

facility to function as a common household unit. See section 202 of the ordinance.

Furthermore the record demonstrates that the residents of the program share household expenses as outlined in the ordinance. Robert Gordon, the Center's director of finance, testified that the residents are charged $30 per day which is an estimate of the expenses that will be incurred per resident. This fee includes costs of items such as food, shelter, counseling and transportation. Juxtapose, we are convinced that the facts on this record do not support the board's argument regarding subsidies from county government. In this regard Gordon's testimony established that the Center shares the expenses with the residents, that a portion of the expenses of operation of the facility not paid by the residents, are paid for by the Center. This contribution by the congregation reflects, and is consistent with the fact, that as many as two sisters reside on the premises at any given time. Accordingly, approximately 50 percent of the facility's operating expenses are paid by the Center/IHM.

Lastly, the board's discussion relating to finances speculates that family living requires that income generated by the family pay all the household expenses. This view is unsupported by case law or under the provisions of the ordinance. In *Miller,* the Supreme Court noted that the fact that children are subsidized by public funds is not determinative of whether the living arrangement constituted a family unit. Common sense dictates that under the board's standards a traditional biological family would not be able to reside in an R-1A district if their living expenses were paid in part by government assistance. When one considers the reality of today's life and the extent to which family members receive support from welfare, workmen's com-

pensation, social security, etc., the speciousness of the board's argument becomes apparent.

Next, the board asserts that because residents are billed by the Center, the concept of family is destroyed. We again disagree. Such a conclusion is contrary to the holding in *Appeal of Miller* which describes how it is common for adult members of a family to contribute to the maintenance of the unit. The fact that members pay fees does not transform the relationship unless the profit motive is the basis for the relationship. Here there is no evidence of any profit motive present. The board's claim is again dismissed as contrived.

The board also argues the temporary nature of the residents and categorizes the operation as a "rooming house." Our appellate court held that the focus, in such circumstances, should be directed to the quality of the relationship rather than the duration of the residence. *Miller, supra.* The kind of support offered by the program is precisely the environment which the traditional family unit is designed to provide. We find no merit in the board's conclusion that the proposed use would constitute a "rooming house." There is nothing in the record to suggest that the Center is renting out individual rooms or portions of a dwelling unit, or that the limit of four unrelated persons in an apartment will be exceeded. See ordinance, 1993, article II, section 202, pp. 2-5. In the matter sub judice, each resident has access to the entire dwelling unit in the manner of a traditional family. (N.T. 56.) The board's conclusion is in direct conflict with the clear terms of the city's ordinance. Compare "rooming house," pp. 2-5, ordinance, and "family," pp. 2-11, ordinance.

Finally, the remaining requirements of a "family" are satisfied: residents share the joint use of the entire dwelling unit (N.T. 36); residents merely sign an agree-

ment to abide by house rules (N.T. 36); no leases are involved (N.T. 36); and there are no more than four unrelated persons in each unit or apartment. (N.T. 36.)

A close review of this record demonstrates that the residents of the program have complied with all of the requirements of a "family" as defined in the City of Scranton's zoning ordinance. We conclude that the zoning board of the City of Scranton erred in revoking St. Joseph's Center's certificate of conformance. Accordingly, an appropriate order will follow, the decision of the board is contrary to the law and unsupported by the evidence.

### ORDER

And now, to wit, February 15, 1996, the court having considered St. Joseph's Center's appeal from the Scranton zoning board's decision, and the briefs and arguments of able counsel and for the reasons set forth in the accompanying opinion, it is hereby ordered that appellant St. Joseph's appeal is sustained and the decision of the Scranton zoning board is reversed.

It is further ordered that appellant's certificate of conformance be reinstated.