**758**

**ROSING, INC.**

v.

**PENNSYLVANIA LIQUOR CONTROL
BOARD, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 7, 1996.
Decided Feb. 20, 1997.
Reconsideration Denied April 9, 1997.

Michael L. Plumley, Assistant Counsel, Harrisburg, for appellant.

Mark F. Flaherty and Martha S. Helmreich, Pittsburgh, for appellee.

Before COLINS, President Judge, FLAHERTY, J., and RODGERS, Senior Judge.

FLAHERTY, Judge.

The Pennsylvania Liquor Control Board (Board) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) reversing the Board's decision to refuse Rosing, Inc. (Licensee) its liquor license renewal application.

Rosalina and Adoration Boyd (Owners) are mother and daughter respectively. They are the sole shareholders of the licensed corporation. During the two-year period between February 1992 and January 1994, the local police made several arrests for criminal activity at or adjacent to the licensed premises.

On February 25, 1994, Licensee filed for renewal. On April 20, 1994, the Director of Licensing issued a letter informing Licensee that its history of operation indicated that it "abused the licensing privilege" and that the Licensee would be contacted to attend a hearing on the matter. On August 9, 1994, a hearing was conducted to determine whether the license would be renewed.

On February 10, 1995, Board filed its order denying Licensee's renewal application pursuant to Section 470 of the Liquor Code.[1] The Board's opinion asserted that the Owners failed to take substantial steps to prevent illegal activity because they failed to contact or help police. On appeal the trial court reversed the Board and opined that the criminal activity at the licensed premises was due to the location of the premises in a high-crime area rather than the fault of the Owners. Also, the trial court held that the Owners took substantial steps to prevent criminal activity and cooperate with police. We affirm.[2]

Our scope of review in liquor license renewal cases is limited to a determination of whether the trial court committed an error of law, abused its discretion, or made findings of fact unsupported by substantial evidence. *Ball Park's Main Course, Inc. v. Pennsylvania Liquor Control Board,* 163 Pa.Cmwlth. 636, 641 A.2d 713, 715 n. 5 (1994).

The Board raises two issues on appeal. The first issue is whether the trial court committed reversible error by making findings of fact contrary to the Board.

The Board correctly argues that the trial court was prohibited from making new findings of fact because the evidence presented to the Board and the trial court did not vary significantly. This court held, in *Pennsylvania Liquor Control Board v. Can, Inc.,* 664 A.2d 695 (Pa.Cmwlth.1995), *petition for allowance of appeal granted,* 543 Pa. 391, 671 A.2d 1135 (1996), that the scope of review for a court of common pleas in license-renewal cases is governed by Section 464 of the Liquor Code.[3] *Id.* at 698. A trial court is

---

1. Section 470 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 4–470. This section allows the Board to institute proceedings to revoke a license or prevent its renewal only if the following occurs:

[A] licensee or his servants, agents or employes are arrested, charged with violating any of the laws of this Commonwealth relating to liquor, alcohol or malt or brewed beverages, and where the board has on file in such cases reports of enforcement officers or investigators of the enforcement bureau or from other sources that a licensee or his servants, agents

or employes have violated any of the aforementioned laws....
*Id.*

2. Because this court has affirmed the order of the trial court by addressing the issues presented by the Board, we need not address the Licensee's due process argument.

3. Section 464 of the Liquor Code, 47 P.S. § 4–464. This section provides that an aggrieved party may appeal the decision of the Board, following a hearing upon refusal of licenses or

prohibited from reversing a decision of the Board unless there has been a manifest abuse of discretion or the trial court makes findings of fact that vary from those made by the Board. *Id.* Furthermore, a "trial court is not permitted to substitute its findings of fact for those of the Board, when the evidence before the two tribunals is substantially the same." *Id.* (citing *Beach Lake United Methodist Church v. Pennsylvania Liquor Control Board*, 126 Pa.Cmwlth. 71, 558 A.2d 611 (1989)). The specific issue, therefore, is whether evidence presented at the trial court was substantially the same as the evidence presented before the Board. We answer in the affirmative.

In *Can*, this court held that the trial court exceeded its scope of review because it made new findings of fact when the evidence presented before the Board and the trial court was substantially the same. In that case, licensee argued that new testimony was given by two witnesses. The court stated that "the additional testimony taken by the trial court, however, mirrors the testimony [that these two witnesses] provided to the Board and was merely cumulative." *Id.* Also, in *Beach Lake*, 558 A.2d at 614, the court stated that "[a]lthough the witnesses who testified before the trial court were different from those who testified before the Board, the evidence presented was substantially the same." *Id.*

■ In the case *sub judice*, the Board presented four new witnesses before the trial court who did not appear before the Board. However, these witnesses were police officers whose testimony mirrored the testimony of other police officers who testified at the Board hearing. The evidence presented before the trial court was substantially the same as the evidence presented before the Board. The trial court, therefore, erred in substituting its own findings of fact for those of the Board's on the basis of conducting a *de novo* review of the Board's decision. *Can*, 664 A.2d at 698. However, we affirm on other grounds [4] because the record shows that the Board manifestly abused its discretion, an issue raised by Licensee in its petition for appeal. The trial court, therefore, was authorized to substitute its own discretion in place of the Board's. *See id.* at 699.

■ The Liquor Control Board abuses its discretion in licensing cases when it commits acts such as " 'errors of judgment, overriding or misapplying the law, a manifestly unreasonable exercise of judgment, or a final result that evidences partiality, prejudice, bias, or ill-will.' " *Arrington v. Pennsylvania Liquor Control Board*, 667 A.2d 439, 441 (Pa.Cmwlth.1995) (quoting *Centrum Prime Meats, Inc. v. Pennsylvania Liquor Control Board*, 71 Pa.Cmwlth. 560, 455 A.2d 742, 745 (1983)). In *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Shinsky)*, 492 Pa. 1, 5, 421 A.2d 1060 (1980), our Supreme Court defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court further explained that "appellate review must focus on whether there is rational support in the record, when viewed as a whole, for the agency action." *Id.* When there is no rational support in the record for a finding, the Board has committed a manifestly unreasonable error of judgment and thereby abused its discretion. Accordingly, after reviewing the record as a whole, a reasonable mind would not accept that the Owners of Rosing, Inc. failed to cooperate with police and, therefore, did not take substantial affirmative measures to prevent criminal activity on the premises.

In *Pennsylvania Liquor Control Board v. TLK, Inc.*, 518 Pa. 500, 544 A.2d 931 (1988),

renewals, in the court of common pleas in the county where the licensed premises are located. This section further provides the following:

The court shall hear the application de novo on questions of fact, administrative discretion and such other matters as are involved, at such time as it shall fix, of which notice shall be given to the board. The court shall either sustain or over-rule the action of the board and either order or deny the issuance of a new license or the renewal or transfer of the license.... *Id.*

4. In *Merlin v. Commonwealth*, 72 Pa.Cmwlth. 45, 455 A.2d 789 n. 2 (1983), we stated that "[w]e may affirm the decision of a trial court if the result is correct on any ground, apart from the ground that the trial court itself relied upon." *Id.*

Justice Flaherty, writing for the Court, interpreted Section 471 of the Liquor Code[5] to impose strict liability on licensees, which is liability for acts committed on a licensee's premises without his knowledge, participation, or presence, for violations of the express provisions in the Liquor Code and regulations. *Id.* at 933. The *TLK* Court, however, held that the test for violations of the criminal laws on the licensee's premises, that are not expressly included in the Liquor Code, require two elements on the part of the licensee in order to endanger the liquor license in an enforcement action—scienter and attempted prevention. *Id.* Justice Flaherty stated the following:

As to what quantum of guilty knowledge or intent will justify proceedings against a liquor license, the case law developed by the Commonwealth Court provides some guidance. Two principles in particular are expressly approved. The first is that if a licensee knew or should have known of illegal activities by an employee or patron, the licensee is liable. The second principle is that a licensee may defend his license by demonstrating that he took substantial affirmative steps to guard against a known pattern of illegal activities. The two principles go hand in hand, for when it is determined that a licensee did not but should have known of covert illegal activities by an employee or patron, the case is likely to involve a discernible pattern of illegal activity.

*Id.* at 933. Although we are cognizant of the fact that *TLK* was an enforcement case, in *Can,* the Commonwealth Court applied this standard to license-renewal cases. *Can,* 664 A.2d at 699.

■ Under this two-pronged conjunctive standard from *TLK,* the owner of a licensed establishment is only liable in an enforcement action for criminal offenses that are not expressly included in the Liquor Code if (1) she knows or should have known of ongoing criminal activities, and (2) she failed to take substantial affirmative steps to prevent such activities. *Id.* at 933. The Board, in the instant case, concluded that the Owners of Rosing, Inc. knew or should have known of the criminal activity on the licensed premises and that they failed to take substantial steps to prevent those activities. *TLK,* 518 Pa. at 505–06, 544 A.2d at 934; *Can,* 664 A.2d at 699. The Board based these conclusions upon the findings that, although the Owners and their employees took "some" measures to prevent the criminal activities of patrons on the licensed premises, their efforts did not rise to the level of taking sufficient measures to prevent that activity because they failed to contact and help police. (R.R. at 21, 22). However, such a finding is not supported by substantial evidence.

Based on the testimony from several police officers, the Board found that the Owners and the employees failed to cooperate with police because they called the police only twice when numerous arrests were made over a two-year period. However, most of the arrests were the result of privileged intelligence received by the officers involved in the arrests. This information was not available to the Owners or their staff. These arrestees were suspected of criminal activity independent from the licensed premises. The Owners had no actual knowledge and had no way of knowing that these prospective arrestees were suspected by the police for drug-related activity. The police twice responded to calls concerning the licensed premises that originated from outside the police department. On both occasions, the calls were placed by the licensed establishment. Therefore, Owners did call the police

5. Section 471 of the Liquor Code, 47 P.S. § 4–471. This section provides, in relevant part, the following:

Upon learning of any violation of this act or any laws of this Commonwealth relating to liquor, alcohol or malt or brewed beverages, or of any regulations of the board adopted pursuant to such laws, or any violation of any laws of this Commonwealth or of the Federal Government relating to the payment of taxes on liquor, alcohol or malt or brewed beverages by any licensee within the scope of this article, his officers, servants, agents, or employees, or upon any other sufficient cause shown, the enforcement bureau may, within one year from the date of such violation or cause appearing, cite such licensee to appear before an administrative law judge....

*Id.*

when they knew of misconduct on the premises.

Assuming that the licensees should have known of ongoing drug related activities, mostly possession, there is no evidence that the licensees had or could have had particularized suspicion of specific individuals or transactions or determined or could have determined the clandestine manner in which these individuals operate. Absent such suspicion, there was no basis for contacting the police on any given occasion. The licensees and their personnel are not trained in detecting drug-related behavior. There was no evidence that an untrained employee should or could normally detect drug-related activities from behind the bar counter. Also, some of the arrests dealt with activities outside the bar or inside the bar after police chased them inside. Therefore, failure to contact police on particular occasions cannot rationally support a finding that the licensees failed to contact or help police.

Moreover, if there was any lack of cooperation, it was by the police who did not cooperate with the licensee. Mrs. Boyd testified that she called the police to clean up the people loitering outside the premises when she first assumed ownership of the premises. The police responded that she could not effect the removal of loiterers who were not on her property. However, in the face of this discouragement, the Owners took other legal and rational measures of self-help without endangering their welfare. Although failing to cooperate with police could support a conclusion that Owners failed to take substantial steps to prevent criminal activities, that finding is not supported by substantial evidence in this case.

In *Bates v. Commonwealth*, 40 Pa.Cmwlth. 426, 397 A.2d 851 (1979), the licensee argued that he was generally aware that there was criminal activity at his establishment but that he had no way to detect secretive behavior on a particularized basis, and, therefore, he could not call the police. *Id.* at 852. Furthermore, the licensee in that case asked the police to come into the premises to conduct weapons checks. *Id.* However, in *Bates*, we upheld the denial of licensee's renewal application and rejected the licensee's argument that there was no cause to contact police without particularized suspicion. *Id.* at 853. The licensee in *Bates*, who admittedly had scienter, failed to prove that he took substantial affirmative measures to eliminate the criminal activity of his patrons, however, and was deemed to have acquiesced to such behavior and, therefore, permitted it. The analysis of the Commonwealth Court in *Bates* was expressly approved in *TLK* while overruling previous cases which held the licensee to strict liability regardless of whether the violation was of the Liquor Code or the Crimes Code. *TLK*, 518 Pa. at 505, 544 A.2d at 933.

The Board next argues that the trial court's finding that the Owners proved the second prong of *TLK*, i.e. they took substantial affirmative measures to prevent criminal activity on the premises, is not supported by substantial evidence. Arguably, the number of arrests at the licensed premises suggests that the Owners should have known of the criminal conduct that existed. However, the *TLK* test is a two-part conjunctive standard, and the trial court expressly found that the Owners took substantial affirmative measures to prevent criminal activity on the licensed premises, thereby satisfying the second prong of *TLK*.

Although we find no cases where the second prong of *TLK* was proven by a licensee, the Owners here took substantial affirmative measures because they made a zealous effort and incurred a financial burden to prevent drug-related activities on the premises while maintaining a reasonable zone of safety for themselves and their personnel. They installed exterior spotlights which were kept on all night. They hired a doorman to patrol the entrance, assess the patrons, and use a metal detector to inspect for weapons. They subsequently hired an armed security guard to assist. The Owners kept all entrances locked and recently installed a buzzer on the front entrance. The Owners disseminated letters to patrons indicating that suspicious or non-spending patrons would be removed. Finally, the ownership posted signs inside and outside the premises prohibiting the sale of drugs anywhere near the premises. The Owners are not required to do

everything possible to prevent criminal activity on the premises, act as their own police force, or close their business. They are only required to take substantial affirmative measures to prevent the misconduct. Such measures were proven. This evidence, as a whole, is relevant evidence that a reasonable mind would accept as adequate to support the conclusion that the Owners of the licensed corporation took substantial steps to prevent criminal activity on their premises which distinguishes the instant case from the results in *Bates* and *TLK* where no such steps were taken.

Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, February 20, 1997, the order of the Court of Common Pleas of Allegheny County at No. S.A. 471 of 1995, entered October 10, 1995 is hereby affirmed.