960 A.2d 427

**William C. KERR, D.D.S., Appellant**

v.

**PENNSYLVANIA STATE BOARD OF DENTISTRY, Appellee.**

Supreme Court of Pennsylvania.

Argued March 6, 2008.

Decided Nov. 19, 2008.

108

William C. Kerr, III, Esq., Du Bois, for William C. Kerr.

Cynthia Kaye Montgomery, Esq., for State Board of Dentistry.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD and McCAFFERY, JJ.

### OPINION

Justice McCAFFERY.

We are asked to determine whether the exclusionary rule associated with the Fourth Amendment to the United States Constitution applies to a civil disciplinary proceeding of the Pennsylvania State Board of Dentistry. We hold it does not, and thus affirm the order of the Commonwealth Court.

The facts are as follows. Appellant, William C. Kerr, D.D.S., licensed until recently by the State Board of Dentistry

("the Board"), has practiced dentistry since approximately 1972. Prior to the commencement of the present matter, no disciplinary action had ever been taken against him. In June 2001, the Pennsylvania State Police began investigating Appellant with respect to controlled substances he had prescribed to certain of his patients whom police had arrested for drug violations. The state police conducted the investigation in conjunction with agents of the federal Drug Enforcement Agency ("DEA"). As part of the investigation, the state police obtained a search warrant for certain of Appellant's books and records, including his files pertaining to fourteen specific patients. The affidavit of probable cause appended to the search warrant application was not signed by the affiant, state police Officer Michael R. Boltz, although Officer Boltz signed the search warrant application in front of Jefferson County Common Pleas Court Judge William Henry, the issuing authority. Reproduced Record ("R.R.") at 102a–104a; 244a–245a.

The state police served the search warrant on November 7, 2001. They spent approximately two and one-half hours conducting their search, during which a DEA agent videotaped the extant conditions of Appellant's office. Also during the search, the state police became aware that six additional individuals, known to the police from their ongoing investigation, were also patients of Appellant. After completing the search and seizing the fourteen specific files they had sought, the police obtained another search warrant for the files of the six additional patients mentioned above. Those files were seized on November 14, 2001.

The state police subsequently notified Cathy McCaine of the Department of State (of which the Board of Dentistry is a part) of the results of their searches, and provided her with copies of the twenty patient files they had seized. The police then sent the original files to the DEA, which in turn provided them for review to Paul A. Moore, D.M.D., Ph.D., a professor at the University of Pittsburgh, whom the DEA had retained as a dental consultant. The purpose of Dr. Moore's review was to evaluate whether there was any indication in the files that narcotics were being distributed by Appellant for reasons

other than dental care. *See* R.R. at 163a; 166a. After reviewing the records, Dr. Moore set forth his conclusions in his "Review of Records: Summary of Findings" dated May 21, 2002. He summarized his general findings based on his review of all the files, and then stated specific findings and opinions regarding four of the patient files. Among Dr. Moore's findings were poor record maintenance, questionable diagnostic descriptions and procedures, use of herbal therapies having little or no scientific basis, heavy prescription of controlled substances (*i.e.,* OxyContin, Percodan, Loracet, Xanax, and Soma), and ignoring patients' "drug diversion" behavior. R.R. at 900a–901a. With respect to the four patient files singled out for detailed findings, Dr. Moore stated in his report that Appellant's treatment of these patients, specifically including his prescribing them drugs, was not "in accordance with the treatment principles accepted by a responsible segment of the medical profession." R.R. at 904a.

On March 24, 2003, the Board filed an eight-count order to show cause why it should not suspend, revoke, or otherwise restrict Appellant's dental license pursuant to the Dental Law, Act of May 1, 1933, P.L. 216, *as amended,* 63 P.S. § 120 *et seq.* The order asserted that Appellant violated several sections of the Dental Law and regulations promulgated thereunder. Specifically, the Board contended that Appellant violated Section 4.1(a)(6), 63 P.S. § 123.1(a)(6), prohibiting, *inter alia,* the violation of Board regulations, by his practices in prescribing, administering and dispensing controlled substances (thereby violating 49 Pa.Code § 33.207(a)); and by his practices in connection with the preparation, maintenance and retention of patient records (thereby violating 49 Pa.Code § 33.209(a)). The Board further asserted that Appellant violated Section 4.1(a)(8), 63 P.S. § 123.1(a)(6), prohibiting unprofessional conduct, including deficiencies in hygienic practices, by (1) ignoring patients' drug diversion behavior; (2) using herbal therapy and recommending adding magnets to an oral water irrigation device for treating oral disease; and (3) sterilizing his dental instruments in a deep fryer filled with hot vegetable oil. *See*

*also* 49 Pa.Code § 33.211(a)(7).[1]

In response to the Board's order to show cause, on May 30, 2003, Appellant served his Answer and Request for Affirmative Relief and New Matter. In addition to disputing the factual allegations of the order to show cause, Appellant alleged that probable cause was lacking for the search warrants and that the warrants were illegally served and executed.

On November 4, 2003, a hearing examiner conducted a disciplinary hearing on the Board's case against Appellant. In addition to documents, the evidence at the hearing consisted of the testimony of Officer Boltz and of two drug diversion investigators employed by the DEA, William Dombrowski and Vincent Tomei. These three witnesses testified regarding their investigation and their search of Appellant's dental office. In addition, Dr. Moore was qualified as an expert and testified at the hearing. He testified about his review of Appellant's records, about his opinions and conclusions based on that review, and about the propriety of Appellant's practice of dentistry as reflected in Appellant's records. On June 16, 2004, the examiner heard Appellant's defense. In addition to Appellant himself, two witnesses testified in Appellant's defense: his office assistant, Cherie Ellen Shaffer, and his wife, Susan Kerr, a medical secretary who worked in Appellant's practice, although not as a paid employee.

On November 15, 2004, the hearing examiner issued a proposed adjudication and order recommending that Appellant be subject to discipline on each of the eight counts and recommending (1) active license suspension of one year; (2) a civil penalty of $5,000; and (3) successful completion of courses in prescribing practices, infection control and patient record-keeping. On November 16, 2004, the Board, pursuant to its authority under the General Rules of Administrative Practice and Procedure, 1 Pa.Code § 35.226(a)(2), issued a notice of intent to review the proposed adjudication and order.

1. Section 33.211(a)(7) provides that it is unprofessional conduct for a dentist to "[fail] to follow current infection-control recommendations issued by the Federal Centers for Disease Control. . . ."

Appellant then filed exceptions, which included a challenge to the search warrants.

Following its review, the Board issued a final adjudication and order on October 24, 2005. The Board adopted the hearing examiner's findings of fact, conclusions of law, and discussion of issues, but enhanced the recommended sanction, suspending Appellant's license for five years—two years' active suspension and three years' probation—and prohibiting him from prescribing, dispensing, housing, purchasing, receiving, or administering any controlled substance for those five years. The Board declined to apply the exclusionary rule, as requested by Appellant, stating that the rule has generally been held inapplicable in administrative proceedings. Appellant sought review of the Board's decision by the Commonwealth Court, which affirmed the determination of the Board in all respects.

We granted allowance of appeal in this matter specifically to determine whether the exclusionary rule applies in civil administrative proceedings, an issue of first impression for this Court. Because this issue is a purely legal one, our scope of review is plenary. *In re Carroll*, 586 Pa. 624, 636, 896 A.2d 566, 573 (2006). Although the issue on which appeal was allowed was framed broadly, the argument in Appellant's brief centers on the exclusionary rule arising under federal Fourth Amendment law. Because Appellant has not asserted an independent claim under the Pennsylvania Constitution, our review is limited accordingly. *Accord In re Redevelopment Authority of Philadelphia*, 595 Pa. 241, 248 n. 3, 938 A.2d 341, 345 n. 3 (2007) (declining to address, *sua sponte*, an issue under the state constitutional analogue to a federal constitutional provision under review).

Appellant reiterates here the argument he made in the Commonwealth Court, to wit, that the search warrants were facially defective and that there was insufficient underlying probable cause. He contends that the exclusionary rule, which is employed as a tool to remedy federal and state constitutional violations resulting from illegal searches and

seizures, should have been applied to suppress the seized evidence and exclude it from the disciplinary proceeding before the hearing examiner.[2] Appellant argues that the police in this case have neither been sanctioned for their alleged infractions nor deterred from future improper action, and that refusal to apply the exclusionary rule to the instant disciplinary proceeding will encourage police misconduct by providing a safe harbor that will permit unlawfully-obtained evidence to be used in civil proceedings. *See* Brief for Appellant at 16.

The Commonwealth Court began its consideration of Appellant's argument by stating that the exclusionary rule generally does not apply in civil or administrative matters. Then, noting that this case involves a civil proceeding only (as

2. The specific grounds upon which Appellant relies for his contention that the search warrants were facially defective and lacked probable cause are not entirely clear. While Appellant, in setting forth the facts in his brief on this appeal, states that the affidavits of probable cause were unsigned, he makes no further mention of this fact. As evidence that he challenged the warrants in the proceedings below, Appellant cites to his Answer and Request for Affirmative Relief and New Matter, and to the transcript of proceedings before the hearing examiner. *See* Brief for Appellant at 7, 13, and 16. Appellant alleges in his Answer that the search warrants "were issued and executed without probable cause and [were] violative of [Appellant's] Constitutional rights afforded to him under the Federal and State Constitutions. The search warrant[s] [were] not only without probable cause but [were] also illegally served and executed." R.R. at 52a. Appellant does not further expound on his challenge to the warrants. At the November 4, 2003 hearing before the examiner, Appellant's counsel argued only that "there is a fatal error on the face of those search warrants. That fatal error being that it doesn't indicate for how many days the search warrant applications and affidavits are to be sealed." R.R. at 70a–71a. Finally, in his Brief on Exceptions filed with the Board, Appellant appears to premise his argument that probable cause was lacking on the fact that Dr. Moore had opined that "there was no evidence whatsoever that [Appellant] was getting kickbacks from patients or drugs nor any evidence [Appellant] was addicted to drugs." R.R. at 1226a. Appellant did not reiterate this argument in his brief in this Court, and, in any event, Appellant has not explained how this fact, even if true, renders the warrants devoid of probable cause. Appellant makes no attempt to explain why the facts set forth in any affidavit of probable cause are insufficient to support a reasonable belief that evidence of a crime is to be found in Appellant's dental office. However, because we hold that the exclusionary rule does not apply to civil proceedings before the Board, Appellant's failure to further particularize his challenge to the warrants is of no moment here.

Appellant has not been charged with a crime), the court held that, even if the warrants had been issued improperly, exclusion of the evidence seized pursuant to the warrants was not required. As explained below, the Commonwealth Court's holding is consistent with the law established by the United States Supreme Court and by this Court.

The United States Supreme Court has "emphasized repeatedly that the State's use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution." *Pennsylvania Board of Probation & Parole v. Scott,* 524 U.S. 357, 362, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (citations omitted). The Supreme Court has explained that the "wrong" which the Fourth Amendment condemns is "fully accomplished" by the unlawful search or seizure itself; use of the fruits of such unlawful search or seizure does not work an additional Fourth Amendment wrong. *United States v. Leon,* 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), citing *Stone v. Powell,* 428 U.S. 465, 540, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) and *United States v. Calandra,* 414 U.S. 338, 354, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). The exclusionary rule therefore is "neither intended nor able to 'cure the invasion of the defendant's rights which he has already suffered.' " *Leon, supra* at 906, 104 S.Ct. 3405 citing *Stone, supra* at 540, 96 S.Ct. 3037. It thus is well-established that the exclusionary rule is not a personal constitutional right of the aggrieved party, but rather is a judicially-created remedy designed to safeguard Fourth Amendment rights in general, through the rule's intended deterrent effect. *United States v. Janis,* 428 U.S. 433, 446, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976).

In determining whether to apply the exclusionary rule, the social costs exacted by such application must be borne in mind. "Because the exclusionary rule precludes consideration of reliable, probative evidence, it imposes significant costs: it undeniably detracts from the truthfinding process and allows many who would otherwise be incarcerated to escape the consequences of their action.... [O]ur cases have repeatedly emphasized that the rule's 'costly toll' upon truth-seeking and law enforcement objectives presents a high obsta-

cle for those urging application of the rule." *Scott, supra* at 364–65, 118 S.Ct. 2014 (citations omitted). *Cf. Hudson v. Michigan,* 547 U.S. 586, 594–95, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) (refusing to extend the exclusionary rule for violations of the knock-and-announce rule because the exclusionary rule's deterrence benefits would not outweigh its substantial costs). It is plain that the rule is not constitutionally mandated; rather, it is a rule of prudence, applying only where its deterrence benefits outweigh the substantial social costs of applying it. *Scott, supra* at 363, 118 S.Ct. 2014.

The foregoing test, *i.e.,* balancing the potential deterrent effect of excluding relevant evidence against the societal costs of doing so, was articulated by the United States Supreme Court in *Janis,* a case involving a civil tax assessment proceeding, where the Court held that the exclusionary rule did not apply in that civil context. *See Janis, supra* at 454, 96 S.Ct. 3021. The Supreme Court noted that the "prime purpose" of the rule, if not the sole purpose, is to deter future unlawful police conduct; the Court further noted that it had never applied the rule to exclude evidence from a civil proceeding. *Id.* at 446–47, 96 S.Ct. 3021. Indeed, the Supreme Court of the United States has repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials. *Scott, supra* at 363, 118 S.Ct. 2014.[3]

 Consistent with the United States Supreme Court's treatment of the exclusionary rule, we have stated clearly that "[t]he basis for employing the exclusionary rule in Fourth Amendment situations is to deter police officials from engaging in improper conduct *for the purpose of obtaining criminal convictions." Pennsylvania Department of Transportation v. Wysocki,* 517 Pa. 175, 180, 535 A.2d 77, 79 (1987) (emphasis added).[4] Thus, like the United States Supreme Court, gener-

---

3. Citing *Calandra, supra,* 414 U.S. at 343–46, 349–50, 94 S.Ct. 613 (grand jury proceeding); *Janis,* 428 US. at 447, 96 S.Ct. 3021 (tax assessment proceeding); *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1050, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (civil deportation proceeding).

4. Citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

ally we have limited the application of the exclusionary rule to criminal proceedings.[5]

Prior to the case *sub judice,* the Commonwealth Court has applied the *Janis* rationale and balancing test in numerous cases, and in each case has held that the exclusionary rule does not apply in the civil context. *See Kyte.v. Pennsylvania Board of Probation & Parole,* 680 A.2d 14 (Pa.Cmwlth.1996) (parole revocation hearing); *Sertik v. School District of Pittsburgh,* 136 Pa.Cmwlth. 594, 584 A.2d 390 (1990) (school board termination hearing); *Pennsylvania Social Services Union v. Pennsylvania Board of Probation & Parole,* 96 Pa.Cmwlth. 461, 508 A.2d 360 (1986) (labor arbitration); *DeShields v. Chester Upland School District,* 95 Pa.Cmwlth. 414, 505 A.2d 1080 (1986) (school board termination hearing); *Kleschick v. Civil Service Commission of Philadelphia,* 27 Pa.Cmwlth. 125, 365 A.2d 700 (1976) (claim for back pay).

[7, 8] In the instant case, the Commonwealth Court determined that the cost of excluding the evidence in question outweighed any deterrent effect that might arise from its exclusion, citing both *Sertik* and *DeShields* as having employed the same rationale. *Kerr,* slip op. at 7 and n. 10.[6] Appellant seeks to distinguish this case from *Sertik* and *DeShields* on the ground that no criminal action has been taken against him, arguing that, in the absence of any criminal charges, the only way to give effect to the purposes served by the exclusionary rule is to apply it to exclude unlawfully-seized

5. The evidence admitted in the civil tax assessment proceeding in *Janis* had been seized unlawfully by a state criminal enforcement officer. *Id.,* 428 U.S. at 454, 96 S.Ct. 3021. The Court noted the "highly attenuated" deterrent effect "when the 'punishment' imposed upon the offending criminal enforcement officer is the removal of [the unlawfully-seized] evidence from a civil suit by or against a different sovereign." *Id.* at 458, 96 S.Ct. 3021. While *Janis* involved *inter* sovereign use of unlawfully seized evidence, *see id.* at 456, 96 S.Ct. 3021 the rationale of the *Janis* balancing test appropriately applies to *intra* sovereign situations as well. *See Scott, supra* at 368–69, 118 S.Ct. 2014 (applying *Janis* balancing test in case involving *intra* sovereign use of evidence seized in violation of Fourth Amendment and used in parole revocation hearing).

6. In both *Sertik* and *DeShields,* evidence gathered during criminal investigations was admitted in civil proceedings.

evidence from Appellant's civil disciplinary proceeding. Appellant's attempted distinction fails. First, no criminal charges were brought in *Sertik*, so the case is not distinguishable on that ground. In addition, Appellant's argument assumes that the warrants here were legally defective or unsupported by probable cause, a question that the tribunals below did not rule upon and which we need not reach.[7] Moreover, merely because Appellant ultimately was not charged with a crime does not mean that the exclusionary rule has not served its purpose. Suspects frequently are not charged with crimes, but this does not mean that the exclusionary rule has failed to serve its purpose of deterring police misconduct in connection with gathering evidence of a crime. The purpose of the federal exclusionary rule is accomplished by its availability in criminal cases generally. The policy justifying the rule need not be re-established in every case where the rule potentially might apply. Appellant's argument is speculative and fails to demonstrate that exclusion of the evidence from his civil license revocation proceeding is necessary to deter police misconduct.

Implicitly recognizing that the exclusionary rule generally does not apply outside the criminal context, Appellant argues that because the Dental Law is a "penal" law, the exclusionary rule should apply to proceedings thereunder. The Commonwealth Court acknowledged the penal nature of the Dental Law, but rejected Appellant's argument, explaining, "the discrete matter at bar is a civil proceeding involving civil sanctions, and nothing else." *Kerr*, slip op. at 5–6. The court added that application of the *Janis* balancing test to this noncriminal proceeding "is particularly apt where [Appellant] was never charged with a criminal offense, and, consequently, there is no reason to believe that exclusion of evidence in this purely administrative matter would discourage the police from

7. In its Final Adjudication and Order, the Board stated that a ruling on the constitutionality of the search warrant was unnecessary, as the exclusionary rule generally has been held inapplicable in administrative proceedings. *See Commonwealth of Pennsylvania Bureau of Professional and Occupational Affairs v. Kerr*, No. 0387–46–03, Final Adjudication and Order at 3 (State Board of Dentistry October 27, 2005) ("Final Adjudication").

engaging in any future misconduct with respect to their criminal investigation." *Id.* We agree.

Because applying the federal exclusionary rule in criminal trials already serves to deter unlawful evidence-gathering by police, the marginal deterrent value of applying the rule to civil proceedings is minimal. *Id.; Janis, supra* at 448, 96 S.Ct. 3021. Accordingly, we decline to apply the rule in the civil context as Appellant requests. *See Scott, supra* at 368, 118 S.Ct. 2014 (stating that the United States Supreme Court has "never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence"). *See also Hudson, supra* at 596–99, 126 S.Ct. 2159 (discussing the availability of civil damages and the increasing professionalism of police forces as alternative deterrents to police misconduct.).

As an alternative to his argument that the Dental Law is similar to a criminal law, Appellant argues that the actual purpose of the state police/DEA investigation here was not to enforce criminal laws but rather was to enforce the Dental Law in order to achieve Appellant's ouster from the dental profession. *See* Brief for Appellant at 15–16. Appellant contends, essentially, that the state police were inappropriately involved in enforcing the Dental Law. The record does not support Appellant's contention.

Officer Boltz testified that "Appellant's name originally started coming up in other investigations" Officer Boltz was conducting in October and November of 2000. R.R. at 85a. Specifically, Officer Boltz and a fellow officer, John Eisman, were engaged in an ongoing investigation during which, operating undercover, they bought OxyContin from numerous people in the Jefferson County and Clearfield County area, and then arrested them. R.R. at 85a–87a. These individuals told the officers that they were patients of Appellant. R.R. at 88a. Officer Boltz then started an investigation of Appellant in approximately June of 2001. R.R. at 85a.

The Dental Board here specifically found that the state police began an investigation of Appellant regarding controlled

substances he had prescribed to individuals the state police had arrested for drug violations. *See* Findings of Fact ¶¶ 6 and 9. In its discussion of the exclusionary rule, the Dental Board stated:

*Although the Department of State and the Pennsylvania State Police are both agencies of the Commonwealth, they have no formal relationship with each other, and are not in any way involved in, or responsible for, one another's operations.* Thus, the suppression of the evidence (dental records) in the administrative proceeding before the hearing examiner would have little effect in deterring the police from illegal searches and seizures, particularly since [Appellant] was not charged by the police with any offenses. On the cost side, the Board's interest in protecting the safety, health and welfare of the citizens of the Commonwealth from dentists who have violated the law and regulations of the Board, especially those rules relating to the prescription of controlled substances, would be jeopardized by the exclusion of serious misconduct by a licensee. . . .

*See* Final Adjudication at 3–4 (emphasis added).[8]

 As the prevailing party below, the Board is entitled to the benefit of all reasonable inferences from the record and to have the record read in the light most favorable to it. *Sell v. Workers' Compensation Appeals Board (LNP Engineering),* 565 Pa. 114, 122–23, 771 A.2d 1246, 1250–51 (2001). Viewing the evidence in the light most favorable to the Board, and drawing reasonable inferences in favor of the Board, the evidence of record indicates that the state police were engaged in a criminal investigation, and were not acting as agents to enforce the Dental Law. Certainly, no inferences can be drawn to support Appellant's argument that the state police were enforcing the Dental Law rather than the criminal law.[9]

8. In addition, Officer Boltz testified to his reason for providing Appellant's twenty patient files to the Commonwealth: "We needed to *notify* somebody of this," R.R. at 119a (emphasis added), further suggesting a lack of any previous planning or coordination between the Dental Board and the state police.

9. The Board is charged with enforcing the Dental Law. *See* 63 P.S. § 122. The Board has limited subpoena power, providing it with

Because the state police are charged with enforcing criminal laws, not the Dental Law, excluding the evidence from Appellant's civil disciplinary proceeding would not serve to deter state police misconduct in future criminal investigations. *Cf. DeShields, supra* at 1083 ("Although the Chester City police department and the Chester Upland School District are both allied local agencies of the same sovereign, they have no formal relationship with each other, and are not in any way involved in, or responsible for, one another's operations. Thus, the suppression of the evidence in the School District's termination hearing will have little effect in deterring the police department from future illegal conduct."). Accordingly, we reject Appellant's argument that the exclusionary rule is needed or indeed would serve in this case to supply a deterrent.

 In addition to the exclusionary rule issue, we also heard argument on a second issue raised by Appellant: whether the Commonwealth Court erred in determining that the Board's findings regarding Appellant's alleged violations of the Dental Law were supported by substantial evidence where the determination was based, in part, on Appellant's records that the Board's dental expert had described as being "incomplete" and of "questionable accuracy." The Commonwealth Court's obligation in deciding this evidentiary issue was to affirm the adjudication unless it determined that any finding of fact made by the Dental Board and necessary to support its

"authority to issue subpoenas, upon application of an attorney responsible for representing disciplinary matters before the board, for the purpose of investigating alleged violations of the disciplinary provisions administered by the board." 63 P.S. § 125.1. Although the Board may not subpoena dental records "without the consent of the patient or without order of a court of competent jurisdiction on a showing that the records are reasonably necessary for the conduct of the investigation," *see id.,* there is no evidence that the Board was investigating Appellant before the state police notified it of the results of their search. There is also nothing to indicate that the Board could not have obtained a subpoena for Appellant's records had it been investigating him. Thus, the record does not support any inference that the state police were either enforcing the Dental Law or attempting to circumvent any requirements of that law by the manner in which Appellant was investigated and charged with disciplinary infractions.

adjudication was not supported by substantial evidence. *See* 2 Pa.C.S. § 704. "Substantial evidence" means "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Sell, supra* at 123, 771 A.2d at 1250 (quoting *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Shinsky)*, 492 Pa. 1, 421 A.2d 1060, 1062 (1980)). The Commonwealth Court determined that the Dental Board's factual determinations were supported by substantial evidence. We have reviewed the Commonwealth Court's analysis of this challenge to the sufficiency of the evidence, and have found no error.

In sum, having determined that the federal exclusionary rule does not apply in the civil disciplinary proceeding that is the subject of this appeal, and having further concluded that there was sufficient and substantial evidence to support the Dental Board's factual determinations, we affirm the order of the Commonwealth Court.

Order affirmed.

Justice SAYLOR and EAKIN and Justice TODD join the Opinion.

Chief Justice CASTILLE files a Concurring Opinion.

Justice BAER files a Concurring Opinion.

Chief Justice CASTILLE, concurring.

I join the learned Majority Opinion in its entirety. I write to address the scope of the exclusionary rule, and Mr. Justice Baer's Concurrence concerning Pennsylvania state constitutional analysis.

Respectfully, the governing law concerning the scope of the exclusionary rule's application is nuanced. Thus, as a Fourth Amendment matter, the U.S. Supreme Court has applied the exclusionary rule in civil proceedings that are merely "quasi-criminal," such as forfeiture proceedings. *See One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 700, 702, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (exclusionary rule applies in forfeiture proceedings, which are quasi-criminal in character

because, like a criminal proceeding, the purpose is "to penalize for the commission of an offense against the law"). On the other hand, there are a number of criminal (or quasi-criminal) proceedings or circumstances in which the exclusionary rule does not apply. For example, exclusion is not an available remedy for Fourth Amendment claims raised in collateral review proceedings, *Stone v. Powell*, 428 U.S. 465, 494–95, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), or at parole board hearings, *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 369, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). Further, in both the Fourth Amendment and Fifth Amendment contexts, otherwise excludable evidence may be introduced for impeachment purposes. *See Oregon v. Elstad*, 470 U.S. 298, 307, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) ("Despite the fact that patently *voluntary* statements taken in violation of [*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] must be excluded from the prosecution's case, the presumption of coercion does not bar their use for impeachment purposes on cross-examination."); *Oregon v. Hass*, 420 U.S. 714, 722, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) (unlawfully obtained statement admissible solely for impeachment purposes when defendant testifies contrary to statement, knowing that such information had been ruled inadmissible for prosecution's case-in-chief); *Harris v. New York*, 401 U.S. 222, 225–26, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (unlawfully obtained statement inadmissible against defendant in prosecution's case-in-chief may be admissible for impeachment. purposes to attack defendant's credibility if statement's trustworthiness satisfies legal standards); *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954) (defendant's assertion on direct examination that he never possessed any narcotics opened door, for purpose of attacking his credibility, to evidence that heroin had previously been unlawfully seized from him).

I also write to address Justice Baer's discussion of the application of the exclusionary rule under Article I, Section 8 of the Pennsylvania Constitution. As the Majority makes clear, the claim in this case is raised exclusively under the Fourth and Fourteenth Amendments, and therefore no sepa-

rate and distinct Pennsylvania constitutional argument is made. In his Concurring Opinion, Justice Baer notes that the result might be different under this Court's jurisprudence concerning the exclusionary rule as applied under the aegis of the Pennsylvania Constitution. Quoting *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), Justice Baer states that, unlike the Fourth Amendment, which has been characterized as deterrence-based, the history of Article I, Section 8 indicates that "the exclusionary rule in Pennsylvania has consistently served to bolster the twin aims of Article I, Section 8; to-wit, the safeguarding of privacy and the fundamental requirement that warrants shall only be issued upon probable cause." Concurring Op. at 441 (quoting *Edmunds*, 586 A.2d at 899). Respectfully, I believe the existing jurisprudence is more nuanced.

*Edmunds* is not the last word on the history of Article I, Section 8, and particularly with respect to the underpinnings of the exclusionary rule as a state constitutional remedy. As this Court has very recently noted, *Edmunds* overlooked the indisputable historical fact that "[t]he exclusionary rule itself [ ] was not an organic part of Article I, Section 8" but was rather "a federal imposition, made applicable against the states for Fourth Amendment purposes by [*Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)]." *Commonwealth v. Russo*, 594 Pa. 119, 934 A.2d 1199, 1207 (2007); *see also Commonwealth v. Glass*, 562 Pa. 187, 754 A.2d 655, 662 n. 11 (2000) ("The philosophical divergence traced in *Edmunds* concerned the purposes of the exclusionary rule originally commanded by *Mapp*: the U.S. Supreme Court has since come to focus on deterrence of police misconduct, while the more recent Article I, § 8, cases from this Court have focused on the potentiality of the rule, once embraced by us, to safeguard privacy and ensure that warrants are issued only upon probable cause."). The *Edmunds* Court considered the purpose of Article I, Section 8 and whether it had been violated, but declined to conduct a separate analysis of whether the exclusionary rule's remedy was appropriate. *Cf. Illinois v. Gates*, 462 U.S. 213, 223, 103 S.Ct. 2317, 76 L.Ed.2d

527 (1983) (whether exclusionary rule's remedy is appropriate in particular context is separate issue from question of whether constitutional rights of party seeking to invoke rule were violated by police conduct).

More importantly, *Edmunds* failed to appreciate (having adopted a new paradigm, the point was most likely not briefed to the Court) that, prior to *Mapp*, Pennsylvania courts had repeatedly rejected the notion that the exclusionary rule (a federal Fourth Amendment remedy in existence since the High Court's 1914 decision in *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914)) was an available remedy under Article I, Section 8. *Russo*, 934 A.2d at 1207. As a matter of state constitutional law, Pennsylvania courts instead "always followed 'the fundamental principle of the common law that the admissibility of evidence is not affected by the illegality of the means by which it was obtained.'" *Id.* (citing *Commonwealth v. Chaitt*, 380 Pa. 532, 112 A.2d 379, 381 & n. 1 (1955); *Commonwealth v. Agoston*, 364 Pa. 464, 72 A.2d 575, 585 (1950); *Commonwealth v. Hunsinger*, 290 Pa. 185, 138 A. 683 (1927); *Commonwealth v. Dabbierio*, 290 Pa. 174, 138 A. 679, 681 (1927); *Commonwealth v. Montanero*, 173 Pa.Super. 133, 96 A.2d 178 (1953); *Commonwealth v. Dugan*, 143 Pa.Super. 383, 18 A.2d 84 (1941)). Thus, "there is **no** relevant history to support a broader state constitutional interpretation [of Article I, Section 8] because there was no point in seeking such an interpretation, at least in a criminal case, since there was no exclusionary remedy available." *Id.*[1] And, of necessity, this history applies to the proper scope of the exclusionary rule.

To be sure, *Russo* recognized that there is a substantial post-*Mapp* body of Pennsylvania cases, too:

1. Justice Baer responds that coming to terms with the deficiencies in *Edmunds* does not diminish the "innumerable occasions" where Pennsylvania courts have applied the exclusionary rule since *Mapp* was decided. Concurring Op. at 130 n. 3, 960 A.2d at 441 n. 3. But the fact that Pennsylvania courts dutifully followed the federal command does not prove the legitimacy of the eventual *Edmunds* divergence. That divergence was explained, in part, by a historical analysis of Article I, Section 8. Obviously, it remains significant that *Edmunds* misapprehended the most relevant history.

. . . Pennsylvania courts, having become familiar by necessity with the command and operation of the federal exclusionary rule, began to entertain equivalent claims under the guise of Article I, Section 8. The progression was not consciously announced or explained, and indeed, in many instances, such disclosure was unimportant because this Court, while citing both the Fourth Amendment and Article I, Section 8, employed a coterminous approach. *See, e.g., Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963); *Commonwealth v. Eazer,* 455 Pa. 320, 312 A.2d 398 (1973); *Commonwealth v. White,* 459 Pa. 84, 327 A.2d 40 (1974); *Commonwealth v. Brooks,* 468 Pa. 547, 364 A.2d 652 (1976); *Commonwealth v. Holzer,* 480 Pa. 93, 389 A.2d 101 (1978). Eventually, however, exclusionary decisions arose that were rendered exclusively under Article I, Section 8, and other decisions were so rendered while recognizing that the course taken represented a break from U.S. Supreme Court authority, and an embrace of a greater protection of privacy rights than that which was commanded under the Fourth Amendment and *Mapp. See, e.g., Commonwealth v. DeJohn,* 486 Pa. 32, 403 A.2d 1283 (1979); *Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457 (1983); *Edmunds, supra.* Even this development was not entirely clear, for **no** decision of this Court has squarely purported to examine and disapprove of the long and unbroken line of pre-*Mapp* decisions holding that, far from recognizing greater exclusionary-rule-related privacy rights, Article I, Section 8 contained no exclusionary remedy whatsoever.

*Id.* at 1207–08.

The point is that the historical examination in *Russo* supplements what can only be regarded as an incomplete historical analysis in *Edmunds,* which cautions greater precision in the future. The fact that Article I, Section 8 rather recently has been construed as embracing twin aims, does not mean that the Pennsylvania exclusionary rule, which is not an organic part of Article I, Section 8, can accurately be construed as commanding a broader application than the federal exclusionary rule from which it directly, and very recently, descended.

Flexibility, including the flexibility to recognize police good faith and other exceptions to the exclusionary rule's reach, is not foreclosed.

Justice BAER, concurring.

I join the majority's holding that the exclusionary rule does not apply to a civil disciplinary proceeding of the Pennsylvania State Board of Dentistry. I write separately, however, to emphasize that this holding generally has no applicability to criminal proceedings and should not be interpreted as equating federal exclusionary rule jurisprudence with that concerning the exclusionary rule, as viewed under the Pennsylvania Constitution.

Based primarily on the United States Supreme Court decisions in *Pennsylvania Board of Probation & Parole v. Scott*, 524 U.S. 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998), and *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), the majority opinion engages in a sound federal analysis regarding why the exclusionary rule does not apply to the particular civil disciplinary proceeding at issue.[1] Employing the balancing test set forth in *Janis*, the majority weighs the potential deterrent effect of excluding the evidence, which Appellant alleges was obtained illegally, against the societal costs that would arise from doing so in this medical license suspension proceeding. The majority persuasively concludes that, under such circumstances, the societal cost of excluding the evidence in question outweighs any deterrent effect that might arise from its exclusion. Thus, the exclusionary rule does not apply.

This paradigm, however, has no application to criminal proceedings, as is demonstrated by the fact that the cases cited by the majority, both federal and state, all involved civil administrative actions. *See Scott, supra* (parole revocation hearing); *Janis, supra* (federal civil tax proceedings); *Pennsylvania Department of Transportation v. Wysocki*, 517 Pa.

1. The majority further cites Commonwealth Court cases where the *Janis* balancing test has been employed to determine whether the exclusionary rule applies to particular civil proceedings.

175, 535 A.2d 77 (1987) (driver's license suspension proceeding), *Kyte v. Pennsylvania Board of Probation & Parole,* 680 A.2d 14 (Pa.Cmwlth.1996) (parole revocation hearing); *Sertik v. School District of Pittsburgh,* 136 Pa.Cmwlth. 594, 584 A.2d 390 (1990) (board of school directors termination hearing); *Pennsylvania Social Services Union v. Pennsylvania Board of Probation & Parole,* 96 Pa.Cmwlth. 461, 508 A.2d 360 (1986) (labor arbitration); *DeShields v. Chester Upland School District,* 95 Pa.Cmwlth. 414, 505 A.2d 1080 (1986) (school board termination hearing); *Kleschick v. Civil Service Commission of Philadelphia,* 27 Pa.Cmwlth. 125, 365 A.2d 700 (1976) (proceeding before the Civil Service Commission).

Contrary to the balancing of interests that occurs in determining the application of the exclusionary rule in civil administrative proceedings like the instant case, the application of the rule in the criminal setting is entrenched in our common law and remains unaffected by the Court's decision herein. Regarding the rule's utility in the criminal realm, this Court declared in the seminal case of *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991):

> Although the exclusionary rule may place a duty of thoroughness and care upon police officers and district justices in this Commonwealth, in order to safeguard the rights of citizens under Article I, Section 8, [of the Pennsylvania Constitution] that is a small price to pay, we believe, for a democracy.

*Id.* at 906.

In addition to the exclusionary rule's universal application in criminal settings,[2] I note that the majority's analysis specifical-

2. The import of this statement regarding universal application of the exclusionary rule in the criminal setting is not meant to suggest the applicability of the exclusionary rule to any nuanced exception referenced by the Chief Justice in his concurring opinion. Rather, I authored this concurring opinion to make absolutely clear my position that we should guard against the erosion of one of society's most cherished of freedoms—the right to be free from unreasonable searches and seizures. The only effective means of protecting such right in the realm of criminal law is to preserve the remedy which chills improper conduct on the part of police, *i.e.,* the application of the exclusionary rule. While I readily acknowledge that it is unfortunate when a

ly has no application to a claim seeking the exclusion of evidence under our Constitution's counterpart to the Fourth Amendment, Article I, Section 8, which has been interpreted as affirmatively protecting our citizens' right to privacy as well as curtailing police misconduct. The majority properly relies upon the United States Supreme Court's decision in *Janis*, and this Court's decision in *Wysocki*, for the proposition that the "prime purpose" of the exclusionary rule in Fourth Amendment situations is to deter unlawful police conduct. Op. at 117, 960 A.2d at 433. The same cannot be said, however, for claims seeking to apply the exclusionary rule under Article I, Section 8 of the Pennsylvania Constitution.

In *Edmunds, supra*, we explained that the history of Article I, Section 8 indicates that the purpose underlying the exclusionary rule in this Commonwealth is quite distinct from the purpose underlying the exclusionary rule under the Fourth Amendment.[3] Rather than the sole purpose being to deter

lawbreaker cannot be brought to justice due to the applicability of the exclusionary rule, as noted in Edmunds, this is a costly, but worthwhile price to pay to preserve liberty and freedom for the vast majority of Americans who will never engage in criminal conduct.

3. To be precise, the Court was looking to the history of the *purpose* underlying the exclusionary rule, *i.e.*, the right to be free of unreasonable searches and seizures, and not the history of the exclusionary rule itself, which became applicable to the states in 1961 pursuant to the United States Supreme Court's decision in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (holding that the exclusionary rule is applicable to state criminal trials because the Fourth Amendment's right of privacy has been declared enforceable against the states through the Due Process Clause of the Fourteenth Amendment).

In his concurring opinion, the Chief Justice faults the historical analysis of Article I, Section 8, as set forth in *Edmunds, on the ground that it failed to* appreciate the fact that, prior to *Mapp*, Pennsylvania courts did not recognize the exclusionary rule as an available remedy under Article I, Section 8. Such view, however, does not diminish the innumerable occasions in which Pennsylvania courts have applied the exclusionary rule to protect against unreasonable searches and seizures since *Mapp* was decided. Moreover, similar to the High Court's adoption of the exclusionary rule in *Mapp* as the remedy to preserve the constitutional right against unreasonable searches, there are other examples of judicially-created safeguards or remedies, which were adopted years after the constitutional right they protect was recognized. For example, the requirement of reading a defendant his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694

police misconduct, we have held that "the exclusionary rule in Pennsylvania has consistently served to bolster the twin aims of Article I, Section 8; to-wit, the safeguarding of privacy and the fundamental requirement that warrants shall only be issued upon probable cause." *Id.* at 889.

While I recognize that Appellant has not raised a claim under the Pennsylvania Constitution, I set forth my observations solely to place on the record my strong opposition to any future attempt to thwart Pennsylvanians' sacred civil liberties by applying the instant holding to circumstances that lay outside the parameters in which in this case was decided. I believe the majority opinion should be viewed for what it is—a reasoned determination that the exclusionary rule does not apply to a civil disciplinary proceeding of the Pennsylvania State Board of Dentistry.

(1966), was found to be essential to assure that a defendant was accorded his Fifth Amendment right against self-incrimination. As with the right to be free from unreasonable searches and seizures, *Miranda* rights are protected through the exclusionary rule. Also, the appointment of counsel, as required by *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), was found to be essential to protect the Sixth Amendment right to counsel. The fact that these judicially-created safeguards or remedies did not exist at the time the constitutional rights they protect were recognized does not diminish their significance, but rather emphasizes it. As these principles form the bedrock of our constitutional jurisprudence, I respectfully suggest that it would be unwise and, indeed, dangerous to advocate erosion of the exclusionary rule when applied in "typical" criminal cases.